## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                )
WAYNE L. BRIDGEFORTH,           )
                                )
            Plaintiff,          )
                                )
      v.                        )        Civil Action No. 10-0080 (ABJ)
                                )
KEN SALAZAR, Secretary,         )
U.S. Department of the Interior,)
                                )
            Defendant.          )
_____ )


## MEMORANDUM OPINION

Plaintiff Wayne L. Bridgeforth brings this action against defendant Ken Salazar, Secretary of the U.S. Department of the Interior, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, claiming racial discrimination and retaliation by his employer, the United States Park Police. Defendant has moved for summary judgment [Dkt. # 21]. Defendant contends that the incidents cited by plaintiff as examples of discrimination or retaliation are not materially adverse actions within the meaning of Title VII, and that they can be explained by legitimate, non-retaliatory motives. Plaintiff abandoned his claim of racial discrimination at hearing on this motion, but he stands by his allegations of retaliation. For the reasons stated below, the Court will grant defendant's motion.

## I.    BACKGROUND

Plaintiff Wayne Bridgeforth began his career with the Department of the Interior on September 22, 2002, as a U.S. Park Police ("Park Police") Officer. Compl. at ¶ 7. The Park Police provide law enforcement services to designated areas of the National Park Service. Ex. A

to Def.'s Mot. Summ. J.   During the period in question, plaintiff worked at Rock Creek Park Station as a patrol officer on the night squad.  Bridgeforth Dep. 9:5–10:17, Feb. 28, 2011.

### A.  Prior EEO Activity

On July 15, 2004, plaintiff, an African-American, filed a formal complaint against the Park Police with the Equal Employment Opportunity Commission ("EEOC").  Compl. ¶ 10.   In the 2004 complaint, plaintiff alleged that he was the subject of racial discrimination and retaliation for a previous EEO complaint he had filed against the U.S. Park Police.  *Id.*  On May 21, 2007, plaintiff's second EEO case was resolved, and he reached a settlement agreement with the Park Police.  *Id.* ¶ 17.   In this case, plaintiff alleges that a majority of his supervisors at the Park Police became aware of the 2004 EEO complaint during the period when it was pending.  *Id.* ¶¶ 11–16.   He also alleges that employment decisions made before and after 2007 were in retaliation for the filing of the complaint and/or the settlement.  *Id.*

### B.  Awards and Commendations

The Park Police confer a number of awards and commendations on "individuals or groups who substantially exceed the normal standards or expectations and contribute to overall Government of Force efficiency."  *Id.* ¶ 19.   Some awards include time off awards in which an excused absence is granted to an employee without charge to leave or loss of pay.  *Id.*  However, a written commendation does not always involve a monetary award or time off.  Brown-Ankney Dep. 22:18–21, Mar. 31, 2011; Burks Dep. 12:20–13:5, Mar. 31, 2011; Thomas Dep. 73:17–74:11, Mar. 28, 2011.

Plaintiff claims that he "performed a number of heroic events" between October 1, 2006, and September 30, 2007, for which he did not receive credit.  Compl. ¶ 20.   These alleged incidents of heroism include:  participating in an "human chain" with other individuals to pull a

motorist from an overturned vehicle; investigating and arresting one individual for assault, and two others for possession of marijuana and crack cocaine; photographing the scene of a hit-and-run accident and completing a motor vehicle report; and utilizing "mastery of the trespassing statute of the District of Columbia" to arrest and charge boaters docked at Washington Harbor after hours with unlawful entry instead of failure-to-obey. *Id.* ¶¶ 21–25.

Plaintiff claims that he was discriminated and retaliated against through the denial of "honors, awards, and/or commendations for his specific acts of heroism and exemplary police work." Pl.'s Opp. at 3. However, in three out of the five acts of "heroism" he describes, plaintiff worked with or assisted at least one other officer of the Park Police, and these officers also did not receive awards or commendations for the incidents in question. In fact, one of plaintiff's supervisors, Sergeant Griffith, could not recall ever giving an award to anyone on his squad. *See* Ex. O to Def.'s Mot. Summ. J. at 4. Nevertheless, plaintiff received several written commendations for other incidents during the period in question – even after the settlement of his second EEO case in May 2007. *See* Exs. P, Q, and R to Def.'s Mot. Summ. J. These included commendations for his teamwork in responding to the pursuit of a stolen vehicle and subsequent foot chase of two suspects in September 2007, and his proper documentation of a crime scene and preparation of a search warrant, which led to the recovery of a loaded weapon, ammunition, marijuana, and other evidence in October 2007. *Id.*

### C.  2007 Performance Evaluation

Plaintiff also claims that he was the target of retaliation through an "unfair and untimely" performance evaluation conducted by defendant in November 2007 that covered the period from October 2006 to September 2007. Ex. S to Def.'s Mot. Summ. J. Plaintiff was evaluated on four categories on a five point scale, where "5," or "Exceptional," is the highest rating and "1" is the

lowest rating.  *Id.*  Plaintiff received a "Superior-4" rating for the categories of "Basic Police Duties" and "Records and Disseminates Information," and a "Fully Successful-3" rating for the categories of "Interpersonal Skills" and "Use and Care of Government Equipment."  *Id.* Plaintiff's overall numeric score was 3.5 and he received an overall evaluation of "Fully Successful."  *Id.*  This was the same rating that plaintiff had initially received for the previous performance evaluation period from October 1, 2005 to September 30, 2006.  Ex. T to Def.'s Mot. Summ. J.

Plaintiff submitted an informal request for reconsideration of his performance evaluation to Lieutenant Brown-Ankey, Commander of the Rock Creek Park Station, arguing that his appraisal contained incomplete arrest statistics and errors and did not include important case highlights.  Ex. U to Def.'s Mot. Summ. J.  Plaintiff requested to have his rating changed to "Exceptional" or "5" in all four categories of the evaluation.  Ex. U to Def.'s Mot. Summ. J. Although an employee who receives a level 4 or level 5 rating may receive a percentage salary increase "[i]f the agency sees fit to provide that and if [the agency is] budgeted for it," defendant maintains that cash awards are "atypical" for the Park Police.  Burks Tr. at 42:19–43:14.  In his career with the Park Police, plaintiff has never received a performance evaluation with "Exceptional" ratings in all four categories.  Bridgeforth Dep. 106:17–21.

On February 7, 2008, approximately three months after his informal request was submitted, plaintiff received a written response from Captain Burks, Commander of the West District of the Park Police, declining to adjust plaintiff's performance evaluation.  Ex. V to Def.'s Mot. Summ. J.  Captain Burks wrote that "Fully Successful" was an "excellent summary rating" and that "the information you have provided is indicative of the fully successful

performance that you have achieved.  By doing so, you have fulfilled the basic requirements of the expectation that you perform your job well." *Id*.

On February 27, 2008, Plaintiff requested a formal reconsideration of his 2007 evaluation in a memo to Chief Pettiford of the Park Police.  Ex. W to Def.'s Mot. Summ. J.  Plaintiff never received a response to this request because the Office of Professional Responsibility ("OPR") considered plaintiff to have dropped the matter and did not process his request further when he "fail[ed] to engage" with OPR after filing the request.  Brodie Decl. ¶ 9.  Plaintiff further claims that the fact he received no change to his rating, and was thus ineligible for a percentage salary increase, is attributable to retaliation.  Compl. ¶ 54.

### D.  Missing Firearms Incident

On April 25, 2008, plaintiff informed Lieutenant Brown-Ankney that he could not locate three weapons – two handguns and a 12-gauge shotgun – which were associated with ongoing criminal cases and being held as evidence pending trial.  Brown-Ankney Dep. 31:11–45:7; Burks Dep. 15:6–18:14; Ex. C to Def.'s Mot. Summ. J.  The weapons were supposed to have been secured in an evidence locker, and plaintiff was the last individual documented to be in possession of them, having signed the weapons out of the temporary evidence locker in January and March of that year.  Ex. C to Def.'s Mot. Summ. J.  At the time that the weapons were signed out, they had not been needed as evidence in the related criminal cases, as those cases were at the preliminary hearing stage and a trial date had not yet been set.  *Id.*  Plaintiff indicated that he had placed the weapons in a different location – a locker used to store shotguns for patrol officers – but could not locate them, even after he was given a day to search.  Brown-Ankney Dep. 34:16–35:7; Burks Dep. 15:6–22; Ex. C to Def.'s Mot. Summ. J.

After plaintiff's supervisors failed to locate the weapons following a search of the entire station, Internal Affairs initiated an investigation into the matter. Brown-Ankey Tr. at 38:17–40:17, 45:3–7. At the time the investigation began, plaintiff was not placed on administrative leave or otherwise subjected to any disciplinary action. Brown-Ankney Dep. 38:22–40:17, 45:2–7. Plaintiff claims that he was the subject of discrimination and retaliation by virtue of the missing evidence investigation, and he alleges that white co-workers who also failed to log evidence into the temporary evidence locker were not investigated. Compl. ¶¶ 30–31.

### E. Administrative Complaints and Pistol Range Incident

After the missing evidence incident, Lieutenant Brown-Ankey became aware of other allegations by plaintiff's co-workers that plaintiff was behaving erratically. Brown-Ankney Dep. 45:2–46:6, 49:4–13. Officers Jermaine Brown, Alcides Vera, and Sean D'Augostine were subsequently asked to submit written reports to plaintiff's supervisors, detailing their safety concerns and describing the behavior they observed at the District 3 Station. Brown-Ankney Dep. 49:4–13.

The reports reflected several instances where fellow officers observed plaintiff mishandling weapons and displaying erratic behavior. On May 8, 2008, Officer Vera observed plaintiff enter the men's locker room "muttering about three guns in a case of his that were missing." Ex. E to Def.'s Mot. Summ. J. at 248. Plaintiff then unholstered his firearm from his belt and tossed it "across the locker room on top of the locker next to him." *Id*. The following evening, Officers Brown and Vera were again in the men's locker room discussing the upcoming overtime shift. *Id*. at 246, 248. When Officer Brown asked plaintiff if he was working the shift, plaintiff responded to the effect that "[t]hey'll probably steal the overtime like they stole my guns." *Id*. at 248. Officer Vera then observed plaintiff pointing his service weapon in Officer

Brown's direction, playing with the hammer of the gun, and saying: "When I find out who took my guns, I'm gonna be like who shot ya." *Id.* On a different night, Officer D'Augostine reported that plaintiff came into the station in an "angry manner" and began "slamming chairs against the wall and saying 'when I catch that thief I am gonna kill 'em. Even if I lose my job over it and go to jail." *Id.* at 247. Lieutenant Brown-Ankney subsequently initiated discussions with OPR about a possible fitness-for-duty evaluation. Burks Dep. 24:4–26:9.

On May 20, 2008, plaintiff was involved in an incident at a pistol range in which he was alleged to have loaded the wrong caliber of ammunition into a handgun with no rear sight and was unable to hit a target from nine feet away. Ex. F to Def.'s Mot. Summ. J. After learning of this incident, OPR, with approval of the Chief and Deputy Chief of the Parks Police, decided to place plaintiff on paid administrative leave and immediately scheduled him for a fitness-for-duty evaluation. Burks Dep. 22:19–26:9.

Plaintiff claims that he was falsely accused of inappropriate conduct by white officers who were aware of his prior EEO activity. Compl. ¶ 33. Plaintiff further alleges that the investigation into the missing evidence was not completed within ninety days "as required by Force policy" and that he was not provided a copy of the complaint "as required by the collective bargaining agreement and consistent with past practice." *Id.* ¶¶ 28, 32. Plaintiff also notes that while on administrative leave, he could not "work overtime and holidays, or obtain supervisory experience . . . and training" and argues that "in the past, officers . . . were allowed to remain in a full duty or limited duty status while being investigated for allegations of misconduct." *Id.* In response, defendant states that the matters were handled in accordance with General Order 31.01, which provides that allegations of serious misconduct against an officer may warrant placement of the officer in a "restricted duty" status pending an investigation, which requires that the officer

be relieved of his or her law enforcement authority. Def.'s Mot. Summ. J at 9; *see* Ex. D to Def.'s Mot. Summ. J.

### F. Fitness-for-Duty Evaluation

Plaintiff claims that defendant failed to provide him with a written reason for the evaluation and opportunity to provide medical information from a practitioner of his choosing. Compl. ¶ 35. Plaintiff further alleges that the Park Police inappropriately provided the psychologist conducting the evaluation with his entire personnel file, which included a Letter of Reprimand, dated April 19, 2006, that was supposed to have been expunged pursuant to the settlement agreement in plaintiff's prior EEO action. *Id.* ¶ 37. In addition, plaintiff contends that defendant failed to provide information to the psychologist of at least five awards and/or commendations that he had earned and mischaracterized the safety complaint as being "voluntary" instead of "solicited." *Id.* ¶ 36.

Plaintiff's fitness-for-duty evaluation found him to be "not fit for full duty." Ex. K to Def.'s Mot. Summ. J. A licensed clinical psychologist conducted the evaluation and wrote that there were "significant concerns" with plaintiff's ability to meet essential requirements of his position. *Id.* Plaintiff remained on paid administrative leave while the Park Police, at plaintiff's request, negotiated with his union for a possible transfer to another line of duty within the National Park Service. Austin Dep. 30:5–31:6. Plaintiff claims that during this time, he qualified to take the written test for promotion to Sergeant but was not allowed to take the examination due to his unfit-for-duty evaluation. Compl. at ¶ 39. After plaintiff's complaint was filed, the Park Police afforded him another opportunity to return to active duty, and his active status was restored after he passed a physical and psychological examination. Burks Dep. 28:8–29:15; 30:18–31:19.

### G.  The Case Before the Court

Plaintiff filed this action seeking declaratory and injunctive relief, including his restoration to active duty, "removal and destruction" of his fitness-for-duty evaluation from Park Police records, a promotion to Sergeant with a retroactive salary increase, a "Superior" performance rating for the year 2007, "commendations and awards for unrecognized acts," as well as compensatory monetary damages "up to the maximum amount permitted by statute," and back pay, with interest, for missed holiday and overtime opportunities as well as "expired and unused annual leave."  Compl. ¶¶ (a)–(t).  Count I alleges that all of the actions of the Park Police of which plaintiff complains were the product of racial discrimination, *id*. ¶¶ 43–51, and Count II alleges that the actions were taken in retaliation for plaintiff's 2004 EEOC complaint, *id*. ¶¶ 52–59.

## II.    ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial."  *Id*. at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247. The non-movant may not, however, rest upon the mere allegations or denials of its pleadings, but must instead establish more than "the mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. The court will "not accept bare conclusory allegations as fact." *Taylor v. F.D.I.C.*, 132 F.3d 753, 763 (D.C. Cir. 1997); *see also District Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory statements lacking any factual basis in the record.").

## B. Discrimination Claims

Plaintiff conceded at oral argument that he was no longer pursuing Count I of his complaint. Mot. for Summ. J. Hr'g Tr. 22:17–25 (Oct. 6, 2011). The Court therefore grants summary judgment in favor of defendant as to Count I of the complaint. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (noting that "[i]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"). Earlier, plaintiff had conceded at his deposition that some of his claim was based on retaliation and he did not address the discrimination allegation in

any substantive way in his opposition to the motion for summary judgment. Bridgeforth Dep. 24:10–25:20 & 32:4–8

The Court also strikes Document 23-1, Plaintiff's Statement of Material Facts and Material Facts in Dispute, on the grounds that it does not comport with LCvR 7(h)(1).[1]

### C. Retaliation Claims

The plaintiff has the initial burden of establishing a prima facie case of retaliation. *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010). If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a "legitimate, nondiscriminatory reason" for its actions. *Jones*, 557 F.3d at 677 (internal quotation marks and citations omitted).

If the employer offers a legitimate explanation for its decision, the question before the court is "whether the employee's evidence creates a material dispute on the ultimate issue of retaliation either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 678 (internal quotation marks omitted), citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). The Court must then determine whether a reasonable finder of fact could infer retaliation from "all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Jones*, 557 F.3d at 677 (internal quotation marks and citations omitted).

---

1   Plaintiff did not object to the Court's taking this action under the Local Rules but submitted that the facts and conclusions set out in the document should be considered in connection with his Opposition to the Motion for Summary Judgment, which the Court has done.

1.  Plaintiff's Prima Facie Case

To establish a prima facie case of retaliation, the plaintiff must show "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d at 677 (internal citation omitted); *see also Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009); *Rochon v. Gonzales*, 438 F.3d 1211, 1219–20 (D.C. Cir. 2006).

An action can be retaliatory under the Title VII framework if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), quoting *Rochon*, 438 F.3d at 1219. Specifically, the plaintiff must "show that a reasonable employee would have found the challenged action materially adverse." *Burlington*, 548 U.S. at 68 (internal quotation marks omitted). Pursuant to the Supreme Court's decision in *Burlington Northern*, the D.C. Circuit has held that a materially adverse action by the employer is one that results in significant harm or hardship, such as affecting her "position, grade level, salary, or promotion opportunities." *Taylor*, 571 F.3d at 1321 (internal quotation marks and citations omitted).

Defendant does not contest that plaintiff engaged in statutorily protected activity by submitting an EEO complaint in July 2004 which was settled in May 2007. Def.'s Mot. Summ. J. at 2. Defendant argues, however, that several of the incidents plaintiff refers to in his complaint do not constitute materially adverse actions within the meaning of Title VII. *See* Def.'s Mot. Summ. J. at 22–23, 25–26. The Court agrees that several incidents described in plaintiff's complaint were not materially adverse.

a. <u>Plaintiff's self-described acts of heroism</u>

Plaintiff contends that defendant's failure "to award the Plaintiff on his earned acts of heroism and exceptional police work" constituted retaliation for plaintiff's EEO activity in July of 2004. Compl. ¶ 54. But plaintiff's protected EEO activity cannot immunize him "from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern*, 548 U.S. at 68 (2006). The Court finds that the lack of special recognition for plaintiff's self-described acts of heroism is one such "petty annoyance." Plaintiff has identified five specific instances of conduct for which he feels he deserved "at least a commendation, minimum." Bridgeforth Dep. 51:18–22. However, the evidence on the record shows that such written commendations do not come with a tangible monetary benefit; rather, they are essentially written compliments. *See* Brown-Ankney Dep. 21:1–15; Thomas Dep. 73:17–74:11. Retaliation claims are not actionable when they allege only "trivial harms." *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007).

Plaintiff alleges, without citation to evidence on the record, that the commendations he seeks would have made him "more likely to be chosen for special and preferred assignments, as well as increased his likelihood of being a top candidate for promotion . . . . " Pl.'s Opp. at 4. But in *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006), this Circuit distinguished "purely subjective injuries" such as "public humiliation, or loss of reputation," which are not actionable under Title VII, from "objectively tangible harm," such as significant changes in the plaintiff's employment status. *Id.* at 902–03. The notion that additional written commendations would have positively affected plaintiff's work environment or expanded promotional opportunities is "inherently speculative." *Allen v. Napolitano*, 774 F. Supp. 2d 186, 201 (D.D.C. 2011) (finding no objectively tangible harm where plaintiff would not "automatically have received a monetary

benefit" had defendant given an award); *Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009) (noting that discretionary bonuses could be "objectively tangible" if they have a "direct, measurable, and immediate effect" upon the employee's compensation, internal citation omitted). In addition, any connection between a lack of commendations and a loss of future promotional opportunities becomes more tenuous in light of the fact that plaintiff actually did receive written commendations for other incidents in December 2006 and in September and October 2007, after the commencement of plaintiff's protected EEO activity. *See* Exs. P, Q, R to Def.'s Mot. Summ. J. Therefore, there is no evidence on the record that defendant's failure to confer additional commendations resulted in any direct, negative changes to plaintiff's job responsibilities or employment status.

Plaintiff also alleges that he should have been nominated by his supervisors for awards that would have made him eligible for time off and monetary benefits. Compl. ¶¶ 19, 54. However, "[t]he failure to be nominated for and to receive an award alone is not enough to be considered materially adverse." *Allen v. Napolitano*, 774 F. Supp. 2d 186, 201 (D.D.C. 2011); *Douglas*, 559 F.3d at 553. In *Douglas v. Donovan*, this circuit held that denial of an award nomination, which itself has no discernible benefit, did not result in "objectively tangible harm" where the prospects for receiving the award were "uncertain." 559 F.3d at 553 (noting that "[t]he Presidential Rank Award . . . is not earned in the ordinary course of employment for adequate or even superior work . . . [i]nstead, it is intended to reward outstanding leadership and innovation . . . qualities that are by their very nature subjective"). The evidence on the record in this case suggests that plaintiff's prospects for receiving monetary awards for his job performance were likewise uncertain and inherently speculative. At least one of plaintiff's supervisors, Sergeant Griffith, could not recall ever having given such an award to a member of

his squad.  In addition, Park Police awards are given out at the discretion of the supervisory staff and do not result automatically from the plaintiff having met certain conditions or achieved certain personal or individual goals.  *See* Ex. M to Def.'s Mot. Summ. J.; Brown-Ankney Dep. 20:13–21; *see also Allen*, 774 F. Supp. 2d at 201 (noting that "[r]ecognition for work on a discrete project is even less certain than receipt of an award through a standard performance-based awards program").

Mere eligibility to be nominated for discretionary time off and monetary awards did not entitle plaintiff to such benefits as a matter of course during his employment.  *See Douglas*, 559 F.3d at 553.  Thus, defendant's failure to award or commend plaintiff for his job performance to his own satisfaction was not materially adverse activity.  And because the failure to commend or award the plaintiff for his self-described acts of heroism was not a materially adverse action, it cannot be a retaliatory action under Title VII.

b. Plaintiff's "fully successful" rating

Plaintiff further contends that defendant targeted him for retaliation by denying him "the proper performance appraisal rating" and by "derailing his efforts at reconsideration."  Pl.'s Opp. at 8.  A performance evaluation can be materially adverse if it affects "the employee's position, grade level, salary, or promotion opportunities."  *Taylor*, 571 F.3d at 1321.  Even an evaluation that is not negative or "adverse in an absolute sense," can be materially adverse if it causes the employee to lose a performance award.  *Weber v. Battista*, 494 F.3d 179, 185–86 (D.C. Cir. 2007).  However, where a plaintiff alleges that a disappointing, but not negative, performance evaluation constitutes a materially adverse action, the plaintiff must present evidence that the evaluations "were attached to" specific and tangible "financial harms."  *Taylor*, 571 F.3d at 1321 (internal quotation marks and citations omitted).

The Park Police evaluation system deems employees to be eligible for percentage salary increases for "sustained superior performance" if they are rated as "Superior-4" or "Exceptional-5" in their yearly performance evaluations. Ex. 12 to Pl.'s Opp. However, eligible Park Police employees do not receive salary increases automatically or as a matter of course. *Id.* Rather, such bonuses are "atypical" and dependent on the agency's budget. *See* Burks Dep. 42:19–43:14; Def.'s Mot. Summ. J. at 38. And, plaintiff received the same performance rating in 2007 that he initially received in 2006, and there is no evidence that had he received performance-based salary increases in prior years. *See Halcomb v. Office of Senate Sergeant-at-Arms of U.S. Senate*, 563 F. Supp. 2d 228, 247–48 (D.D.C. 2008) (finding no materially adverse action where plaintiff presented no evidence that performance evaluation differed from prior years); *cf. Weber*, 494 F.3d at 185 (noting plaintiff had received the same bonus in three consecutive years prior to EEO activity); *Burke v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002) (holding that plaintiff had received the same bonus "nearly every year" prior to his EEO activity").

Even if plaintiff's 2007 performance evaluation had differed from those received in prior years, there is no evidence that plaintiff's evaluation resulted in tangible loss to plaintiff in the form of missed salary increases, bonus awards, or promotional opportunities. Plaintiff's "bare, conclusory allegation" that a salary increase could have resulted in such a tangible loss is purely speculative. *Taylor*, 571 F.3d at 1321; *see also Benjamin v. Duncan*, 694 F. Supp. 2d 1, 9 (D.D.C. 2010) (holding that plaintiff's mere assertion that she would have received a monetary award was "too speculative to support the conclusion that her 'Successful' performance rating was an actionable adverse action").

Plaintiff also alleges that defendant's failure to follow certain procedures regarding his requests for reconsideration of his evaluation was either itself retaliatory, or demonstrated

retaliatory intent on the part of the defendant. Pl.'s Opp. at 10–13. Given that plaintiff received a formal, written memorandum from Captain Burks of the Rock Creek Station responding to his request for reconsideration, it is difficult for the Court to see how defendant's failure to respond to plaintiff's twenty-eight page request within seven calendar days was a materially adverse action. *See* Ex. V to Def.'s Mot. Summ. J.; Burks Dep. 37:1–40:1.

Viewed on its face, plaintiff's "Fully Successful" performance rating cannot be considered materially adverse without additional evidence that such a rating came with specific and tangible financial harm. *See Powell v. Castaneda*, 247 F.R.D. 179, 183 (D.D.C. 2007) (finding that a fully satisfactory rating is "properly setting an employee down the path of prosperity rather than perdition"). Plaintiff has not come forward with evidence that would support such a finding, so the performance rating does not give plaintiff a claim that can survive a motion for summary judgment.

### c.  Missing firearms investigation and administrative leave

By contrast, the Court finds that the administrative investigation into the missing firearms incident and plaintiff's subsequent placement on administrative leave could qualify as materially adverse actions under Title VII.

Specifically, plaintiff alleges that defendant's administrative investigation into the missing firearms incident was conducted "unfairly and untimely" in retaliation for plaintiff's protected EEO activity. Compl. ¶ 54. Administrative or disciplinary investigations "can constitute materially adverse actions that would support a retaliation claim," even if such investigations do not result in disciplinary action. *Rattigan v. Holder*, 604 F. Supp. 2d 33, 52 (D.D.C. 2009) (citation omitted). However, the plaintiff must provide evidence that the investigation "posed an *objective* harm to his reputation or prospects." *Id.* at 54. For example, in

*Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006), the D.C. Circuit concluded that an internal investigation into the actions of a FBI employee could constitute materially adverse action because the pending investigation prevented the plaintiff from receiving promotions, "placed a cloud over [her] career," and "effectively prevent[ed] her from obtaining other career-enhancing assignment[.]"

Plaintiff has not provided evidence that his work assignments or promotional opportunities were affected by the missing weapons investigation. Still, it is clear from plaintiff's complaint and his alleged conduct at the time that he considered the mere initiation of the investigation to be an unwelcome and negative development. Therefore, the Court will assume for summary judgment purposes that the investigation could have constituted materially adverse action.

Plaintiff further alleges that defendant's decision to place him on paid administrative leave pending an investigation into the administrative complaint from his fellow officers regarding allegations that he exhibited unsafe and erratic behavior was in retaliation for his protected EEO activity. Compl. ¶ 54. Plaintiff's leave status affected his ability to apply for promotional opportunities, and defendant does not dispute that placing plaintiff on administrative leave could have been a materially adverse action. Def.'s Mot. Summ. J. at 40–41.

The Court will therefore examine whether the defendant has offered a legitimate, non-retaliatory explanation for the administrative investigation and plaintiff's placement on administrative leave.

### 2. Defendant's Legitimate, Non-retaliatory Explanations

Where the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to produce a "legitimate, nondiscriminatory reason" for its actions. *Jones*, 557 F.3d at

677 (internal quotation marks omitted). If the employer offers a legitimate explanation for its decision, the Court must decide whether plaintiff has put forward enough evidence to allow a reasonable jury to infer "that the employer's given explanation was pretextual" and "shielded discriminatory motives." *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005); *Jones*, 557 F.3d at 678, citing *Aikens*, 460 U.S. at 716.

Defendant argues that the investigation, fitness for duty evaluation, and placement on paid administrative leave were justified by plaintiff's erratic and unsafe behavior, and it has offered evidence in the form of statements and memoranda from plaintiff's fellow employees and supervisors to support that position. After examining the evidence on the record, the Court agrees.

### a. Administrative investigation into missing weapons

Defendant argues that the missing weapons incident was serious enough to warrant an administrative investigation, and that plaintiff was a proper focus of inquiry. Def.'s Mot. Summ. J. at 40. The weapons missing from the locker in which evidence was supposed to be secured were crucial evidence in an ongoing criminal investigation, *see* Ex. C to Def.'s Mot. Summ. J., and it was necessary to dismiss the charges against the individual when the weapons could not be located prior to a court hearing. *Id.* Given the circumstances, the serious consequences, and the fact that plaintiff was the last person to log the weapons out of the temporary evidence locker, *id.,* plaintiff was the logical focus of an administrative investigation. Therefore, the Court finds that defendant has offered a legitimate, non-discriminatory explanation for the administrative investigation into the missing evidence. *See Brown v. Mills*, 674 F. Supp. 2d 182, 193 (D.D.C. 2009) (holding that defendant had a legitimate explanation for investigation where two employees relayed concerns to their supervisors that plaintiff's conduct was "unusual").

Plaintiff argues that defendant's explanation lacks credibility and is a pretext for retaliatory behavior because he "overheard" that another white officer was not investigated for failure to properly log other evidence into the temporary evidence locker. Compl. ¶ 30. But this claim, even if it were true, does not lead to an inference of retaliatory motive. A mere failure to log evidence properly pales in comparison to three missing firearms and the resulting collapse of an entire criminal prosecution. *See* Def.'s Mot. Summ. J. at 27 n. 7.

Plaintiff's claim is further undermined by the fact that Internal Affairs was notified of the missing weapons on April 26, 2008, nearly a full year after plaintiff's EEO complaint was settled in May 2007. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (holding that fact that action was taken twenty months after protected activity "suggests, by itself, no causality at all"). The two events therefore lack the temporal proximity necessary for an inference of retaliatory behavior. *See id.* Moreover, although the record shows that Captain Burks and Lieutenant Brown-Ankey were generally aware of plaintiff's past EEO complaints, plaintiff conceded at oral argument that there was no evidence in the record showing that they knew about the terms of the settlement agreement. Tr. at 13–16. This lack of evidence cuts against plaintiff's theory that the supervisors responsible for the challenged decisions retaliated against him because they knew that the agency was required to pay his attorneys' fees and other costs pursuant to the settlement agreement. *Id*. at 13. In fact, the evidence shows that plaintiff's supervisors did not even know that the complaint had been settled.

Because plaintiff has offered no evidence that defendant's explanation lacks credence or was a pretext for retaliatory behavior, no reasonable jury could conclude that the administrative investigation was motivated by retaliatory animus.

b. <u>Plaintiff's placement on administrative leave</u>

Defendant also argues that plaintiff's behavior with his firearm in the locker room, followed by his alleged erratic conduct at a shooting range six days later, justified the referral for a fitness-for-duty evaluation and the decision to his place him on administrative leave.  Def.'s Mot. Summ. J. at 42–44.

Even plaintiff concedes that the allegation that he displayed his firearm in a menacing manner at fellow officers is a "very serious" matter.  *See* Bridgeforth Dep. 181:3–11.  But plaintiff argues that the officers' written statements concerning the incident are inadmissible hearsay, and that the testimony of his superiors lack credibility.  Pl.'s Opp. at 16–19.  The Court disagrees; plaintiff's supervisors have offered credible and consistent testimony that they "honestly and reasonably believed that the underlying . . . incident occurred."  *Brady*, 520 F.3d at 496.  In addition, the written statements of four of plaintiff's fellow officers are not hearsay, since they were not offered for their truth, but rather to show their effect on plaintiff's supervisors.  *See* Fed. R. Evid. 801(c); *Crockett v. Abraham*, 284 F.3d 131, 134 (D.C. Cir. 2002) (holding that third party statements concerning employee were not hearsay where "[employer]'s decisionmaking was under challenge, and [the employer] explained it on the basis of the information [it] received.").  Thus, defendant has offered substantial evidence that the decision to place plaintiff on administrative leave pending a fitness-for-duty evaluation was motivated by legitimate safety concerns.

Plaintiff, by contrast has failed to offer a shred of evidence that defendant's responses to allegations of serious professional misconduct were motivated by any retaliatory animus. Plaintiff's conclusory and unsubstantiated allegation of retaliation is further undermined by the fact that his protected EEO activity occurred more than a year prior to his placement on

administrative leave.  *See  Breeden*, 532 U.S. at 273;  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)  (finding that the causal link between plaintiff's EEOC complaint and employer's alleged retaliatory action was "much more tenuous" where the two events occurred one year apart).  Thus, as was the case with the firearms investigation, these events lack the temporal proximity necessary for an inference of retaliatory behavior.

Therefore, the Court finds that no reasonable jury could conclude that defendant's placement of plaintiff on administrative leave was retaliatory.

c.  Plaintiff's unfit for duty designation and alleged procedural errors

Plaintiff also alleges that the unfit-for-duty designation he received was in retaliation for his protected EEO activity.  Compl. ¶ 54.  Defendant explains that the designation was based upon the determination made by a licensed clinical psychologist who expressed serious concerns about plaintiff's behavior.  Def.'s Mot. Summ. J. at 41–42.  Plaintiff does not challenge the factual findings of the fitness-for-duty evaluation, but rather, cites a number of alleged procedural irregularities as the evidence of retaliation.  Pl.'s Opp. at 21–28.

First, plaintiff argues that defendant failed to inform him in writing of the reason for his fitness-for-duty evaluation and notify him of an opportunity to provide medical information from his personal physician.  Compl. ¶ 37.  In addition, plaintiff argues that the personnel file defendant provided for his fitness-for-duty evaluation contained a letter of reprimand which should have been expunged pursuant to a prior settlement agreement, and that it did not contain a record of the commendations which plaintiff had received during his time with the Park Police. *Id.*  Finally, plaintiff submits that defendant was required complete the investigation into the administrative complaint within ninety calendar days and provide plaintiff with a copy of the complaint within twenty-one days, and did not do so.  *Id.*  Plaintiff asks the Court to infer

retaliatory motive from these circumstances. *See* Pl.'s Opp. at 20–28. The Court declines to do so.

While "a plaintiff can . . . discredit the employer's [stated] reason [for adverse action] by . . . pointing to the employer's failure to follow established procedures," to demonstrate pretext, a plaintiff "must show both that the reason was false, and that discrimination . . . was the real reason." *Houston v. SecTek*, Inc., 680 F. Supp. 2d 215, 221 (D.D.C. 2010) (internal quotation marks and citations omitted). In *Hampton v. Vilsack*, 760 F. Supp. 2d 38, 55 (D.D.C. 2011), the plaintiff argued that his employer's failure to inform him in writing of the reason for his termination and other minor procedural violations gave rise to an inference of retaliation. Another court in this district held that the procedural errors were "immaterial" because they did not establish that the defendant's "true motivation" was retaliation. *Id.* Similarly, here the alleged procedural errors cited by Officer Bridgeforth are insufficient to establish that defendant's legitimate explanation for ordering the fitness-for-duty evaluation was false, or that retaliation was the true motive.

The record reflects that plaintiff was well aware of the reason he was referred for the fitness-for-duty evaluation, and there is no evidence to suggest that the negative outcome of the evaluation would have been different had a redacted personnel file been provided to the psychologist. *See* Ex. K to Def.'s Mot. Summ. J. Rather, that determination was made based upon "significant concerns" about plaintiff's ability to perform basic job functions. *See id.* In addition, defendant notes that the administrative investigation into plaintiff's conduct was suspended pending his evaluation and return to full duty status, at which time plaintiff was given a copy of the administrative complaint. Burks Dep. 16:22–17:16.

Finally, as with the firearms investigation and administrative leave claims, plaintiff's entire claim that the unfit-for-duty designation which he received in July of 2008 was retaliatory is undermined by the fact that the designation occurred nearly fourteen months after the settlement of plaintiff's EEO complaint, and the two events lack any temporal proximity.  *See Breeden*, 532 U.S. at 273; *Woodruff*, 482 F.3d at 529.  Plaintiff's claims that the investigation and leave decisions were somehow tainted are further undermined by the fact that he was never disciplined as a result of the administrative investigation and was never fired by defendant despite his unfit-for-duty designation.  Instead, plaintiff was kept on paid administrative leave until he passed a second fitness-for-duty evaluation in 2010.  Burks Tr. at 28:8–29:15; 30:18–31:19.  Rather than supporting an inference of retaliation, the evidence suggests that defendant went to great lengths to accommodate the difficulties that plaintiff's employment presented.

The procedural errors that the plaintiff has cited are thus insufficient to establish, or even to support, a mere inference that defendant's "true motivation" was retaliatory.  *Hampton*, 760 F. Supp. 2d at 55. The Court therefore finds that no reasonable jury could conclude that the unfit-for-duty designation was retaliatory.

> d.  <u>Written sergeant's examination</u>

Lastly, plaintiff claims that while he was on administrative leave, he was denied the opportunity to take the written examination for promotion to the rank of sergeant, and that this denial was retaliation for plaintiff's earlier protected EEO activity.  Compl. ¶¶ 39, 54.

Defendant has offered a legitimate, non-retaliatory explanation for its actions in denying plaintiff the opportunity to take the examination for sergeant.  Park Police General Order 35.01 requires that officers must be able to perform the full range of police duties before they are eligible for promotion.  Ex. L to Def.'s Mot. Summ. J. at VII.H.  Because plaintiff was found

unfit for duty by a licensed clinical psychologist, an action this Court has found to be non-retaliatory, plaintiff must show that defendant's observance of General Order 35.01 was pretext for a retaliatory motive.

Plaintiff has not offered any evidence of pretext beyond mere speculation and conclusory statements. *See Taylor*, 132 F.3d at 763. In fact, plaintiff's opposition fails to even mention the word "retaliation" in his discussion of the sergeant's exam and his administrative leave status. Pl.'s Opp. at 28–30. Finally, the examination occurred more than sixteen months after the settlement of plaintiff's EEO complaint and the two events lack any temporal proximity. *See Breeden*, 532 U.S. at 273; *Woodruff*, 482 F.3d at 529. Therefore, the Court finds that no reasonable jury could conclude that denying plaintiff the opportunity to take the written examination for sergeant was retaliatory behavior under Title VII.

3. Evidence of Pretext

Because defendant has pointed to legitimate, non-discriminatory explanations for its conduct, the Court must decide whether plaintiff has put forward enough evidence to allow a reasonable jury to infer "that the employer's given explanation[s] w[ere] pretextual" and "shielded discriminatory motives." *Murray*, 406 F.3d at 713.

Plaintiff's entire case for pretext is that he settled an EEO complaint with his employer, and nearly a year after the settlement he was subjected to "bad acts" at the hands of the defendant. Pl.'s Opp. at 1. Although courts will draw inferences of retaliatory behavior from facts supporting those inferences, a plaintiff cannot overcome a defendant's legitimate, non-retaliatory explanations with mere speculation. *See Taylor*, 132 F.3d at 763.

Defendant's explanations for each of the adverse employment actions cited by plaintiff relate to specific incidents of alleged professional misconduct or erratic behavior on plaintiff's

part.  *See* Def.'s Mot. Summ. J. at 3–12.  By contrast, plaintiff's reply brief fails to even mention the word "pretext" or "pretextual" and is merely a recitation of the litany of alleged procedural inaccuracies on defendant's part.  *See* Pl.'s Opp.  This Court will not infer the existence of retaliatory animus on the sole basis that some of defendant's actions were not completed within a recommended procedural timeframe.  Procedural inconsistencies, standing alone, are insufficient evidence of retaliatory motivation.  *See SecTek,* 680 F. Supp. 2d at 221.

Plaintiff has not established the existence of more than a mere "scintilla of evidence" to suggest that defendant's legitimate explanations are pretextual, *Anderson*, 477 U.S. at 252, and therefore the claim cannot survive a motion for summary judgment.

## III.    Conclusion

For the foregoing reasons, the Court will grant defendant's motion for summary judgment [Dkt. # 21] in full.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE: December 20, 2011